1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                        NORTHERN DISTRICT OF CALIFORNIA

8

9    MICHAEL MOGAN,                          Case No.  21-cv-08431-TSH

10                  Plaintiff,

11          v.                               **ORDER GRANTING MOTIONS TO**
                                             **DISMISS**
12   SACKS, RICKETTS & CASE LLP, et al.,     Re: Dkt. Nos. 12, 16

13                  Defendants.

14

15                         **I.    INTRODUCTION**

16          Plaintiff Michael Mogan sues Airbnb and three of its employees, Jeff Henry, Dave Willner

17   and Sanaz Ebrahini (collectively, the "Airbnb Defendants") and counsel that represented the

18   Airbnb Defendants in an underlying state court action, Sacks, Ricketts & Case, LLP and two of its

19   attorneys, Michele Floyd and Jacqueline Young (collectively, the "SRC Defendants") for claims

20   related to a sanction award against him.  The Airbnb Defendants now move to dismiss all claims

21   against them as being barred by the litigation privilege or, alternatively, on grounds of issue

22   preclusion.  ECF Nos. 12 (Airbnb Mot.).  The SRC Defendants move to dismiss and for an order

23   striking Mogan's sole claim against them for abuse of process pursuant to California Code of Civil

24   Procedure Section 425.16.  ECF No. 16 (SRC Mot.).  Mogan opposes both motions.  ECF Nos. 21

25   (Airbnb Opp'n), 26 (SRC Opp'n).  The Court finds these matters suitable for disposition without

26   oral argument.  *See* Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal

27

28

*United States District Court*
*Northern District of California*

1    authority, and the record in this case, the Court **GRANTS** both motions for the following reasons.[1]

2                              ## II.    REQUESTS FOR JUDICIAL NOTICE

3            As an initial matter, the parties request the Court take judicial notice of over 60 documents

4    from the underlying state court action and related arbitration proceedings, consisting of documents

5    that were filed and correspondence between the parties.  ECF Nos. 12-1. 16-1, 21, 26.

6            In general, the Court may not look beyond the four corners of a complaint in ruling on a

7    Rule 12(b)(6) motion, except for documents incorporated into the complaint by reference and any

8    relevant matters subject to judicial notice.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.

9    2007) (per curiam); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  The Court may take

10   judicial notice of matters that are either (1) generally known within the trial court's territorial

11   jurisdiction or (2) capable of accurate and ready determination by resort to sources whose

12   accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

13           A court may "take judicial notice of undisputed matters of public record, including

14   documents on file in federal or state courts."  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442

15   F.3d 741, 746 & n.6 (9th Cir. 2006) (taking judicial notice of court filings and a hearing transcript

16   and noting that a court "may take judicial notice of court filings and other matters of public

17   record"); *Porter v. Ollison*, 620 F.3d 952, 954-55 & n.1 (9th Cir. 2010) (taking judicial notice of

18   court dockets); *McCurdy v. Davey*, 2020 WL 43110, at *5 n.1 (N.D. Cal. Jan. 2, 2020) (same).

19   The same holds true for arbitration filings.  *See Trs. of the Operating Eng'rs Pension Tr. v. Smith-

20   Emery Co.*, 2018 WL 5983551, at *2 n.3 (C.D. Cal. Nov. 14, 2018) (taking judicial notice of

21   arbitration filings); *Glob. Indus. Inv. Ltd. v. Chung*, 2020 WL 5355968, at *4 (N.D. Cal. Sept. 7,

22   2020) (same).  Further, because Mogan's complaint references many of the documents, including

23   pleadings and communications and orders leading to the sanction award against him, the Court

24   may fairly consider those exhibits under the doctrine of incorporation by reference, without

25   converting the motion into one for summary judgment.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071

26   (9th Cir. 2009); *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Davis v. HSBC*

27   _____

28   [1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 8, 18, 23.

*Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("where a document has been incorporated by reference in a complaint, a court 'may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) ("Because Plaintiffs incorporate by reference Mr. Hunt's declaration, relying on portions of it in their complaint, we may properly consider the declaration in its entirety").

Accordingly, the Court **GRANTS** the parties' requests for judicial notice.

## III.    BACKGROUND

Mogan is an attorney licensed to practice in California.  Compl. ¶ 17, ECF No. 1.  In 2018 he filed a civil complaint in San Francisco Superior Court on behalf of his client, Veronica McCluskey, "after . . . Airbnb employees destroyed her business in retaliation for reaching out to Fox News and the Los Angeles Police Department about Airbnb Inc's inaction towards an Airbnb Superhost William Hendricks who was trafficking illegal drugs through the United States mail including at his Airbnb rental in Los Angeles."  *Id.*; *see also McCluskey v. Henry et al.*, San Francisco County Superior Court Case No. CGC18567741.  After the Airbnb Defendants filed a motion to compel arbitration based upon an agreement executed between Airbnb and McCluskey, the court granted the motion and stayed the case pending the outcome of arbitration proceedings. Compl. ¶ 19.

McCluskey subsequently filed an arbitration claim, and on February 26, 2019, the American Arbitration Association ("AAA") emailed the parties with a request for $200 from McCluskey and $7,500 from the Airbnb Defendants to proceed with the arbitration.  *Id.* ¶ 20. Mogan alleges AAA closed the arbitration proceedings because the Airbnb Defendants did not pay the $7,500 filing fee by the due date.  *Id.* ¶¶ 22-25.  McCluskey filed a motion to lift the stay, arguing that Airbnb's purported untimely payment resulted in a "default" in arbitration such that the state litigation could move forward.  Taylor Decl., Ex. 20, ECF No. 12-22.  However, on August 8, 2019, the superior court denied her motion, finding the Airbnb Defendants' payment was timely and the AAA had acknowledged as much in writing.  Compl. ¶ 30; Taylor Decl., Ex. 22, ECF No. 12-24.  Specifically, the court found:

United States District Court
Northern District of California

1
2
3
4
5
6

> Contrary to Plaintiff's contention, Defendants are not in "default" in the arbitration proceeding. Rather, the American Arbitration Association made a clerical error by misapplying defendants' timely fees and then, as a result, administratively closed the case. Once the AAA realized and acknowledged its mistake, it requested confirmation from plaintiff that she wants the case reopened. Plaintiff's counsel did not respond to that repeated request by the AAA. The Court will not allow Plaintiff to take advantage of the AAA's clerical error and her own lengthy delays in order to evade her contractual obligation to arbitrate her claims, if she wishes to pursue them.

7   Taylor Decl., Ex. 22

8       Prior to the court's ruling, and in response to McCluskey's motion to lift the stay, the SRC

9   Defendants served a California Code of Civil Procedure section 128.7 safe harbor letter that stated

10  their intent to file a motion for sanctions, along with a draft of the motion.  Compl. ¶ 33.  Mogan

11  alleges "Defendant SRC LLP sent Plaintiff the email on behalf of all the Defendants in an attempt

12  to force Plaintiff to choose between being extorted out of $25,047.70 or withdrawing the motion to

13  lift stay and paying the AAA a filing fee because based on information and belief, no $7,500

14  payment had been made by Airbnb Inc. on April 5, 2019 to the AAA."  *Id.* ¶ 38.  He further

15  alleges it was "sent to annoy and harass Plaintiff and to use the threat of disciplinary charges by

16  the state bar to obtain an advantage in a civil dispute between Veronica McCluskey and

17  Defendants Dave Willner, Jeff Henry and Sanaz Enrahini and with the conscious disregard of the

18  rights of Plaintiff, and with the intent to vex, injure or annoy such as to constitute oppression,

19  fraud or malice upon Plaintiff."  *Id.* ¶ 35.

20      After the court denied McCluskey's motion, the SRC Defendants filed a revised sanctions

21  motion.  *Id.* ¶ 44.  On September 11, 2019, the court granted the motion in part, finding the motion

22  to lift the stay was "both factually and legally frivolous."  Taylor Decl., Ex. 23, ECF No. 12-25.

23  In its order, the court reiterated its findings about Airbnb's timely payment of its arbitration fee

24  and McCluskey's improper purposes in bringing such a motion:

25
26
27
28

> Defendants' motion for sanctions pursuant to Cal. Civ. Proc. Code § 128.7 is granted. The Court finds that Plaintiff Veronica McCluskey's motion to lift stay, which the Court [denied] by order dated August 8, 2019, was both factually and legally frivolous. In particular, the Court finds that plaintiff's contention that defendants were in "default" in the arbitration proceedings was entirely lacking in either evidentiary or legal support. In fact, as set forth in the order, and as was fully

1

2    known to plaintiff's counsel, the American Arbitration Association
     had made a clerical error by misapplying defendants' timely fees and
3    then, as a result, administratively closed the case. Once the AAA
     realized and acknowledged its mistake, it requested confirmation
4    from plaintiff that she wanted the case reopened. Plaintiff's counsel
     did not respond to that repeated request by the AAA, but instead
5    brought the frivolous motion to lift the stay, by which counsel sought
     to take advantage of the AAA's clerical error and her own lengthy
6    delays in order to evade her contractual obligation to arbitrate her
     claims and to avoid the effect of the Court's earlier order granting
7    defendants' petition to compel arbitration. Plaintiff's counsel now
     compounds his misconduct by accusing defendants' counsel of
     "continued attempts to commit fraud upon this Court and Plaintiff"
     and of "lying," among other things, accusations which the Court finds
     to be baseless and unprofessional.

8

9    *Id.*  The court then ordered Mogan (but not McCluskey) to pay the attorneys' fees the Airbnb

10   Defendants incurred in opposing the motion to lift the stay, totaling $22,159.50.  *Id.*

11       McCluskey appealed the sanctions order, but the California Court of Appeal found that "by

12   the time Mogan filed the request to lift the stay, AAA had already informed counsel that

13   defendants were not in default, waiver, breach or violation of the covenant of good faith and fair

14   dealing." Taylor Decl., Ex. 25 at 16, ECF No. 27.  The court went on to state that Mogan had

15   selectively relied on "isolated portions" of AAA's emails to counsel, and that "reading [those

16   emails] as confirmation that AAA considered the arbitration closed . . . due to defendants'

17   nonpayment of fees . . . strains credulity."  *Id.*  The court concluded:

18       No reasonable attorney could conclude, as Mogan contends, that
         AAA had determined the case would not be reopened due to
19       *defendants' conduct*. Instead, the only reasonable view of those
         emails is that despite the payment issue, if any, AAA did not consider
20       the case finally closed and would reopen it as soon as counsel
         confirmed McCluskey wanted to proceed to arbitration. In brief, and
21       as the trial court correctly found, the matter did not proceed to
         arbitration *solely due to the failure of Mogan to confirm that
22       McCluskey wanted to proceed to arbitration* and there was no legal
         support for McCluskey's request to lift the stay.

23

24   *Id.* at 16-17 (emphasis in original).  Both the California Supreme Court and the Supreme Court of

25   the United States denied Mogan's petitions for review.  Taylor Decl., Exs. 26–27, ECF Nos. 28-

26   29.

27       On September 8, 2021, Mogan filed a complaint in this District against San Francisco

28   Superior Court Judge Ethan Schulman, who entered the sanctions order, and Justice Ioana Petrou,

United States District Court
Northern District of California

the Appellate Court Justice, who authored the opinion affirming the order, claiming they violated his constitutional rights. *Mogan v. Petrou*, No. 21-cv-06959-TSH, (N.D. Cal. Sept. 8, 2021). That case was dismissed on November 17, 2021. *Id.*, ECF No. 13; *Mogan v. Petrou*, 2021 WL 5359400 (N.D. Cal. Nov. 17, 2021).

Mogan filed the present complaint on October 29, 2021, alleging one cause of action for abuse of process against all named defendants and the following causes of action against the Airbnb Defendants: intentional infliction of emotional distress; intentional interference with prospective economic relations; civil conspiracy; violations of RICO, 18 U.S.C. § 1962(c) and (d); and unfair business practices, Cal. Bus. & Prof. Code §§ 17200, et seq.

The Airbnb Defendants filed their motion to dismiss on November 24, 2021. The SRC Defendants filed their motion on November 29, 2021.

## IV.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

1    conclusory statements."  *Iqbal*, 556 U.S. at 678.

2         If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

3    request to amend the pleading was made, unless it determines that the pleading could not possibly

4    be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

5    banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny

6    leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

7    failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

8    party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

9    892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

10   (1962)).

## V.  DISCUSSION

### A.    Airbnb Defendants

#### 1.    Litigation Privilege

14        The Airbnb Defendants argue Mogan's complaint against them fails because it relies

15   exclusively on allegations covered by California's litigation privilege.  Airbnb Mot. at 7.  This

16   privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by

17   litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4)

18   that [has] some connection or logical relation to the action."  *Action Apartment Ass'n, Inc. v. City

19   of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (alteration in original); *see also* Cal. Civ. Code §

20   47(b).  The California Supreme Court previously summarized the privilege as follows:

> The requirement that the communication be in furtherance of the
> objects of the litigation is, in essence, simply part of the requirement
> that the communication be connected with, or have some logical
> relation to, the action, i.e., that it not be extraneous to the action. A
> good example of an application of the principle is found in the cases
> holding that a statement made in a judicial proceeding is not
> privileged unless it has some reasonable relevancy to the subject
> matter of the action.

26   *Silberg v. Anderson*, 50 Cal. 3d 205, 219-20 (1990), *as modified* (Mar. 12, 1990).  "The breadth of

27   the litigation privilege cannot be understated.  It immunizes defendants from virtually any tort

28   liability (including claims for fraud), with the sole exception of causes of action for malicious

United States District Court
Northern District of California

1    prosecution." *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010). The privilege exists to

2    afford litigants "the utmost freedom of access to the courts without fear of being harassed

3    subsequently by derivative tort action," *Action Apartment Ass'n*, 41 Cal. 4th at 1241, and to ensure

4    that lawyers "zealously protect their clients' interests" by "protect[ing] them from the fear of

5    subsequent derivative actions for communications made in the context of judicial proceedings."

6    *Edwards v. Centex Real Est. Corp.*, 53 Cal. App. 4th 15, 30 (1997).

7                    **a.    Judicial or Quasi-Judicial Proceedings**

8            All seven of Mogan's claims against the Airbnb Defendants arise from his allegations that

9    Airbnb, its employees, and its former attorneys lied about paying the arbitration fee in the

10   underlying arbitration and sought sanctions in the state case for improper purposes. These

11   communications were made in judicial or quasi-judicial proceedings. First, Airbnb sought and

12   then moved for sanctions in San Francisco Superior Court in McCluskey's case against the Airbnb

13   Defendants after Mogan filed his motion to lift the stay. This was a communication within a

14   judicial proceeding. Second, Airbnb communicated with AAA about the timeliness of its

15   arbitration payment as part of the impending arbitration between McCluskey and the Airbnb

16   Defendants. Communications within arbitration equally satisfy this element of the test. *See*

17   *Moore v. Conliffe*, 7 Cal. 4th 634, 642-43 (1994) (holding that the litigation privilege applies to

18   communications in arbitration). Further, the privilege applies even though Airbnb communicated

19   with AAA about its payment before arbitration began because it was done "in anticipation of"

20   arbitration—and was necessary for the arbitration to commence. *See Visto Corp. v. Sproqit*

21   *Techs., Inc.*, 360 F. Supp. 2d 1064, 1068 (N.D. Cal. 2005) (noting that "[p]re-litigation demands in

22   anticipation of litigation" satisfy the test); *Herterich v. Peltner*, 20 Cal. App. 5th 1132, 1138

23   (2018), *as modified on denial of reh'g* (Mar. 28, 2018) ("The litigation privilege also extends to

24   communications that have some relation to an anticipated proceeding."); *Lopez Reyes v. Kenosian*

25   *& Miele, LLP*, 525 F. Supp. 2d 1158, 1161 (N.D. Cal. 2007) ("California courts have held that

26   pleadings and proceedings, even potentially those occurring before or after the lawsuit, that have

27   'some relation' to the lawsuit are privileged under section 47(b).").

28           In his opposition, Mogan focuses on the original version of the sanctions motion—which

                                                    8

the Airbnb Defendants served on him but did not ultimately file—and argues that claims based on this first version are not barred.  Airbnb Opp'n at 1-3.  As the basis for his argument, he characterizes the Airbnb Defendants' attempt to meet and confer in connection with the first version of the sanctions motion, along with the June 10, 2019 cover letter sent with service of that motion, as a "demand letter" and a "threat."  *Id.* at 3.  He then argues that the litigation privilege does not apply because these communications, along with service of the first version, were a "hollow threat of litigation" and not a "necessary or useful step in the litigation process."  *Id.* (citing *Action Apartment Ass'n*, 41 Cal. 4th at 1251).  However, as the June 10, 2019 cover letter noted, service of the motion for sanctions was pursuant to and in accordance with California Civil Procedure Code section 128.7(c)(1)4, as were Airbnb's efforts to meet and confer before filing the motion.  *See* Mogan's Request for Judicial Notice in Support of Opp'n ("Mogan's RJN"), Ex. 1, Ex. 3 at 7, Ex. 7 at 5, ECF No. 21-1; Compl. ¶ 106.  It is clear that serving a motion in compliance with the rules—a motion that was ultimately granted by the superior court—was a step in the litigation process.  Moreover, this is a distinction without a difference, since the revised motion, which was served, filed, and granted, asserted substantively the same arguments as the previous version.[2]  If anything, the Airbnb Defendants' subsequent filing of the revised version of the motion, which was also served on Mogan in advance pursuant to section § 128.7(c)(1), demonstrates that the filing was seriously contemplated and in good faith.  *Compare* Mogan's RJN, Ex. 3 (first motion for sanctions, dated June 10, 2019), with Mogan's RJN, Ex. 7 (second motion for sanctions, filed August 8, 2019).

### b.     Litigants or Other Participants

Second, the communications regarding the Airbnb Defendants' motions for sanctions and the statements to the AAA about the timeliness of the payments were both communications made by Airbnb's counsel, who were participants in the state court litigation.  *See Silberg*, 50 Cal. 3d at 219 ("Defendant's statements . . . were made by a participant, i.e., the attorney for a party.").

---

[2] The Court also notes that the Airbnb Defendants were required to serve Mogan with the motion but to refrain from filing it within 21 days of service to allow Mogan time to withdraw his motion to lift the stay.  Cal. Civ. Proc. Code § 128.7(c)(1).

### c.   Communications Made to Achieve the Objects of the Litigation and Logically Related to the Action

The final two elements overlap and are satisfied here.  "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." Id. at 219-20.  Both communications at issue here were directly related to the Airbnb Defendants' efforts to defend themselves in state court and arbitration.  First, when Airbnb corrected the AAA with respect to its clerical error that led it to administratively close the arbitration, Airbnb did so in order to proceed with arbitration.  Such a communication aimed at reopening the case was made to achieve the objects of arbitration, in lieu of litigation.  Second, when the Airbnb Defendants served and filed their respective motions for sanctions, they sought to deter Mogan's conduct—the filing of what they considered a frivolous motion to lift stay—from obstructing the objects of litigation.  Although Mogan claims they brought the motions for sanctions to threaten him and for other improper purposes, the sanctions motion was connected to the action at bar and therefore satisfies the final element required to establish the litigation privilege.  See, e.g., Eisenberg v. Alameda Newspapers, Inc., 74 Cal. App. 4th 1359, 1379-80 (1999) (noting that a "classic example" of an application of the litigation privilege is an "attorney demand letter threatening to file a lawsuit if a claim is not settled" (citation omitted)).

### d.   Summary

In sum, the Court finds that Mogan's state law claims against the Airbnb Defendants fail under the litigation privilege.  However, the Airbnb Defendants have not shown that this California privilege applies to Mogan's federal claims.  Accordingly, dismissal of Mogan's state law claims (claims 1-4 and 7) is appropriate based on the litigation privilege.

## 2.   Issue Preclusion

In the alternative, the Airbnb Defendants argue the Court should dismiss all counts of Mogan's complaint under the doctrine of issue preclusion—also called collateral estoppel—because the allegations underlying each count have already been repeatedly rejected in California state court.  Airbnb Mot. at 10.

1    Issue preclusion "'protect[s] against the expense and vexation attending multiple lawsuits,

2    conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the

3    possibility of inconsistent decisions.'"  *Media Rights. Techs., Inc. v. Microsoft Corp.*, 922 F.3d

4    1014, 1020 (9th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Under

5    California law,[3] this doctrine applies "(1) after final adjudication (2) of an identical issue (3)

6    actually litigated and necessarily decided in the first suit and (4) asserted against one who was a

7    party in the first suit or one in privity with that party."  *DKN Holdings LLC v. Faerber*, 61 Cal. 4th

8    813, 825 (2015).

9                                  a.       **Final Adjudication**

10    Issue preclusion requires that "the judgment sought to be invoked in bar must be the last

11    word of the rendering court—a final judgment."  *Franklin & Franklin v. 7-Eleven Owners for Fair*

12    *Franchising*, 85 Cal. App. 4th 1168, 1175 (2000) (simplified).  Here, the sanctions order is a final

13    judgment on the merits with respect to the issues contained therein.  *See Consumer Advoc. Grp.*

14    *Inc. v. Kintetsu Enters. of Am.*, 150 Cal. App. 4th 953, 980 (2007) (holding that a sanctions order,

15    the time for which to appeal had expired, was "final and on the merits" as to the issues contained

16    within the order, even though the merits of the underlying case had not reached final judgment).

17    The issues that the state court relied upon in sanctioning Mogan included that Airbnb paid its

18    arbitration fee on time, that Airbnb did not conceal or lie about the timeliness of its payment, and

19    that Airbnb's purpose in seeking sanctions against Mogan was necessarily proper.  *See* Taylor

20    Decl., Exs. 22-25.  Once the Court of Appeal affirmed the sanctions order, the "finality required to

21    invoke [preclusion was] achieved."  *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th

22    Cir. 2007) (citation omitted) (noting that finality occurs when an appeal "has been exhausted or

23    the time to appeal has expired").

24    In his opposition, Mogan argues "[t]here is no state court decision that was a final

25    judgment on the merits" as to the "unfiled sanctions motion" in the state court action and a

26    "plethora [of] conduct afterwards," which he never specifies.  Airbnb Opp'n at 4.  This argument

27    _____

28    [3] "In determining the preclusive effect of . . . state court judgment[s], [federal courts] follow the
      state's rules of preclusion."  *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012).

United States District Court
Northern District of California

1     is without merit, as the state court sanctions order was exactly such a decision.  *See* Taylor Decl.,

2     Ex. 23.  Both versions of the sanctions motion made the same arguments challenging the same

3     motion to lift the stay.  The sanctions order—which was affirmed on appeal and which ruled upon

4     the issue of whether the arbitration fee was timely paid and, by definition, the issue of whether the

5     motion was brought for a proper purpose—was final, and that final judgment necessarily

6     subsumes the issues raised in both versions of the motion.  *Id.*, Exs. 23, 25.  While Mogan is

7     correct that the final judgment did not reference the first, unfiled version of the sanctions motion,

8     it is a pointless distinction since the same substantive arguments were made in the filed version.  A

9     sanctions order is "final" as to the issues contained therein once its appeal has concluded, even

10    where the merits of that case have not reached final judgment.  *Consumer Advoc. Grp.*, 150 Cal.

11    App. 4th at 980.

12            Accordingly, the sanctions order is a final judgment on the merits with respect to all issues

13    the Airbnb Defendants seeks to preclude.

                          **b.      Identical Issue**

15            "The 'identical issue' requirement addresses whether 'identical factual allegations' are at

16    stake in the two proceedings, not whether the ultimate issues or dispositions are the same."

17    *Hardwick v. Cty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *Lucido v. Superior Court*,

18    51 Cal. 3d 335, 342 (1990)).  Each of Mogan's claims here relies on factual allegations (1) that

19    Airbnb's arbitration payment was late and (2) that Airbnb served and filed its motions for

20    sanctions for improper purposes.  These exact allegations were litigated in state court, where the

21    San Francisco Superior Court determined them to be false, including in a sanctions order that was

22    affirmed on appeal.

23            For example, in denying Mogan's motion to lift the stay, the state trial court found that the

24    AAA "made a clerical error by misapplying defendants' timely fees," and stated that it would "not

25    allow [McCluskey] to take advantage of the AAA's clerical error and her own lengthy delays in

26    order to evade her contractual obligation to arbitrate her claims, if she wishes to pursue them."

27    Taylor Decl., Ex. 22.  The court repeated these findings in granting Airbnb's motion for sanctions

28    following the "factually and legally frivolous" motion to lift the stay.  *Id.*, Ex. 23.  The court then

United States District Court
Northern District of California

12

stated that Mogan "compounds his misconduct by accusing defendants' counsel of 'continued attempts to commit fraud upon this Court and Plaintiff' and of 'lying,' among other things, accusations which the Court finds to be baseless and unprofessional." *Id.* These rulings, which the state court affirmed on appeal, concern the exact allegations that Mogan relies upon now in each of his seven causes of action.

### c.   Issues Were Actually Litigated and Necessarily Decided in State Court

California courts "have understood the 'necessarily decided' prong to require only that the issue not have been entirely unnecessary to the judgment in the initial proceeding." *Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (alterations omitted). In granting Airbnb's motion for sanctions, the state court necessarily concluded that the motion had merit and was not brought for improper purposes. Likewise, in denying Mogan's motion to lift the stay, the state court was required to consider and reject Mogan's argument that Airbnb had failed to pay the arbitration fee on time. These issues were also actually litigated. In both his motion to lift the stay and his opposition to the motion for sanctions, Mogan argued that Airbnb's payment was untimely and that Airbnb lied about and concealed that fact. Taylor Decl., Exs. 20, 28. And although not made as an explicit argument in the state court, the question of whether Airbnb's motives were proper in seeking sanctions in state court was necessarily litigated; as the state court would not have granted the motion had it been meritless and without a proper purpose.

Mogan argues that the issues were "not actually litigated and decided in any court" because the time to appeal the order denying the amended motion to lift the stay has not run. Airbnb Opp'n at 4. However, the Airbnb Defendants are not asserting issue preclusion on the basis of the order denying the amended motion to lift the stay in McCluskey's case. Rather, they assert issue preclusion on the basis of the issues decided in the sanctions order against Mogan, as affirmed on appeal by the state appellate court. As stated above, a judgment is "final and on the merits" as to the issues contained therein once the time for appeal has been exhausted, even if the merits of the case are still pending. *Consumer Advoc. Grp. Inc.*, 150 Cal. App. 4th at 980. Here, the sanctions

1   order became final after it was affirmed on appeal.[4]

2            **d.     Same Parties or in Privity**

3          Issue preclusion can only be asserted against parties to a prior lawsuit or those in privity

4   with them. *Samara*, 5 Cal. 5th at 327. For preclusion purposes, a party "is one who is 'directly

5   interested in the subject matter, and had a right to make defense, or to control the proceeding, and

6   to appeal from the judgment.'" *DKN Holdings*, 61 Cal. 4th at 825 (quoting *Bernhard v. Bank of*

7   *Am. Nat'l Tr. & Savings Ass'n*, 19 Cal. 2d 807, 811 (1942)).

8          The Airbnb Defendants argue Mogan was a party to the action because (1) his personal

9   conduct (in moving to lift the stay) necessitated the sanctions motion, (2) he was directly affected

10   by the sanctions order, and (3) he appealed from the judgment both on behalf of his client and (as

11   "Objector and Appellant") in his personal capacity. *See* Taylor Decl., Ex. 25. They note that

12   Mogan alleges the underlying litigation caused him "severe emotional distress." Compl. ¶ 66.

13   However, even without deciding whether Mogan, as an attorney representing a client, could be

14   considered a party in the underlying litigation, it is clear that he was in privity with McCluskey.

15   "[P]rivity requires the sharing of an identity or community of interest, with adequate

16   representation of that interest in the first suit, and circumstances such that the nonparty should

17   reasonably have expected to be bound by the first suit." *DKN Holdings*, 61 Cal. 4th at 826

18   (citation and quotation marks omitted). Mogan should have "expected to be bound" by the state

19   court's timeliness finding. The state court sanctioned him for moving to lift the stay on the basis

20   that the timeliness of Airbnb's payment was "fully known" to him at the time of filing, and he was

21   admonished for accusing Airbnb's counsel of misconduct and lying about the timeliness of the

22   payment. *See* Taylor Decl., Exs. 23-24. After these repercussions, which implicated him

23   personally, Mogan cannot be allowed to relitigate the factual allegations on the grounds that he did

24   not expect to be bound by the state court's decision. Further, although Airbnb itself was not a

25   party to the sanctions proceedings, issue preclusion does not require identical parties on both sides

26

27   _____

28   [4] Mogan also suggests that the state appellate court actually found that Airbnb's arbitration payment was late. Airbnb Opp'n at 4. This a misrepresentation of the appellate order, which makes clear that the payment was timely. *See McCluskey v. Henry*, 56 Cal. App. 5th 1197, 1203-04 (2020).

of the courtroom; rather, it applies when "asserted against one who was a party in the first suit or one in privity with that party." *Samara*, 5 Cal. 5th at 327. Here, both Airbnb and its individual defendant employees assert the same issue preclusion argument against Mogan, so it is irrelevant whether Airbnb was a party or in privity with a party to the original action. *See Sartor v. Superior Court*, 136 Cal. App. 3d 322, 326 (1982) (noting that master-servant and indemnitor-indemnitee are examples of privity relationships).

### e.    Summary

In sum, the Court finds the four required elements of the litigation privilege are satisfied. Mogan is therefore bound by the following facts determined in state court: (1) Airbnb timely paid its arbitration fee, and (2) Airbnb sought sanctions for a proper purpose. Because Mogan's allegations to the contrary underlie each of his causes of action before this Court, the application of issue preclusion means that each of Mogan's causes of action fails to state a claim upon which relief can be granted. Dismissal is therefore appropriate.

## B.    SRC Defendants

The SRC Defendants argue Mogan's abuse of process claim must be dismissed under California's Anti-SLAPP statute because it is premised exclusively on litigation-related speech and activity and is therefore privileged under Civil Code section 47.

### 1.    Legal Standard

California Code of Civil Procedure section 425.16 provides for a special motion to strike a "strategic lawsuit against public participation" ("SLAPP"). Such a motion, commonly called an "anti–SLAPP motion," provides courts with a remedy to dismiss at an early stage non-meritorious litigation that challenges various kinds of protected speech. *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 905 (2002); Cal. Civ. Proc. Code § 425.16(b)(1). The anti–SLAPP statute is given full effect in federal court. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).

Section 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person
> in furtherance of the person's right of petition or free speech under
> the United States Constitution or the California Constitution in

United States District Court
Northern District of California

> connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

Subdivision (e) specifically immunizes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law

Cal. Civ. Proc. Code § 425.16(e).

In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* The claim is subject to dismissal only when the defendant shows that the claim is based on protected conduct and the plaintiff fails to show a probability of success on that claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002).

For the first part of the test, a defendant must make a prima facie showing that the claim "arises from" its conduct "in furtherance of" its exercise of free speech or petition rights as defined in section 425.16(e). *Equilon*, 29 Cal. 4th at 61. "For purposes of the anti-SLAPP statute, a cause of action 'arises from' conduct that it is 'based on.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237, 1244–45 (2013)). Thus, a court must ask what activities form the basis for each of a plaintiff's causes of action. *Id.* The court then must ask whether those activities are "protected" and thereby bring the cause of action within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1182–84 (2011)).

For the second part of the test, the burden shifts to the plaintiff to establish as a matter of law that no such protection exists. *Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102

16

Cal. App. 4th 449, 456 (2002).  To establish a probability of prevailing, a plaintiff must

demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie

showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

credited.  *Premier Med. Mgmt. Systems, Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476

(2006).  The plaintiff must also present evidence to overcome any privilege or defense to the claim

that has been raised.  *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).

      2.      **Analysis**

           a.      **Anti-SLAPP Step One**

      The SRC Defendants' initial burden of making a prima facie showing of protected activity

is "not an onerous one."  *Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 590 (2017).  The

statute protects "conduct in furtherance of the constitutional right of petition."  Cal. Civ. Proc.

Code § 425.16(e).  This includes "[s]tatements made in litigation, or in connection with litigation."

*Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 803 (2015).  Courts have

found "'all communicative acts performed by attorneys as part of their representation of a client in

a judicial proceeding or other petitioning context are per se protected as petitioning activity by the

anti-SLAPP statute.'"  *Kulkarni v. Upasani*, 659 F. App'x 937, 940 (9th Cir. 2016) (quoting

*Contreras v. Dowling*, 5 Cal.App.5th 394, 409 (2016)).

      "A cause of action 'arising from' defendant's litigation activity may appropriately be the

subject of a section 425.16 motion to strike."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006).

Here, Mogan's claim for abuse of process falls within the first prong because it arises exclusively

out of protected litigation activity.  *See id.* (A claim for abuse of process arises from litigation

activity because it "arises when one uses the court's process for a purpose other than that for

which the process was designed."); *see also Booker v. Rountree*, 155 Cal. App. 4th 1366, 1370

(2007) ("that is the essence of the tort of abuse of process—some misuse of process in a prior

action—and it is hard to imagine an abuse of process claim that would not fall under the protection

of the statute.").  Mogan alleges "Defendants' conduct amounts to an abuse of process because

[the RSC] Defendants maliciously misused the first sanctions motion and letter sent over email

and served upon Plaintiff at his office to accomplish a purpose not warranted by the law."  Compl.

United States District Court
Northern District of California

¶ 59; *see also id.* ¶¶ 60 ("Defendants' conduct and fraudulent preparation and service of the letter and first sanctions motion was done intentionally and with the purpose and ulterior motive of delaying the California court hearing for Plaintiff's motion to lift the stay . . . ."); 61 ("Defendants' conduct and fraudulent preparation and service of the sanctions motion upon Plaintiff was an improper use of the process in the litigation of the California proceedings between Plaintiff's client Veronica and [the Airbnb Defendants].").  These communications were all performed by the SRC Defendants as part of their representation of the Airbnb Defendants.  His claim is based on "statements, writings and pleadings in connection with civil litigation [which] are covered by the anti-SLAPP statute." *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007).

Mogan argues the "sanction motion and Ms. Young's declaration did not include the statements from the May 9, 2019 AAA email" and "the second sanctions motion Ms. Floyd now included a statement in her declaration '[f]irst, and foremost, the AAA's payment deadline was April 5, 2019 and Defendants' fees were paid on April 5.  The AAA misapplied the payment to a different case, however, and administratively closed the file." SRC Opp'n at 7; *see also* Floyd Decl., ECF No. 26-3 at 71-73, Young Decl., ECF No. 26-3 at 78-81.  However, Ms. Young's declaration, the original sanctions motion, and the filed sanctions motion all constitute "communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." *Contreras*, 5 Cal. App. 5th at 409.

Mogan also argues the criminal illegality exception applies in this case.  SRC Opp'n at 8. California courts have created a very narrow exception to the anti-SLAPP statute that does not provide protection for criminal conduct that has been conceded or is determinable as a matter of law based on uncontroverted evidence. *Flatley*, 39 Cal. 4th at 320.  Mogan argues that exception applies here because "[t]he declarations include false testimony which is illegal as matter a matter of law and the Defendants should be prevented from arguing the sanctions motion filed requires the Court to strike Plaintiff's complaint under Cal. Civ. Pro. §425.16 for an unfiled motion." SRC Opp'n at 8.  However, Mogan himself concedes that this exception is narrow and applies only to conduct that was either conceded by the moving party to be illegal or demonstrated by the

United States District Court
Northern District of California

nonmoving party to be illegal as a matter of law.  *See Flatley*, 39 Cal. 4th at 314; SRC Opp'n at 9.
Neither has occurred here, and the mere allegation that the SRC Defendants engaged in criminally
illegal conduct by following the sanctions procedure outlined in section 128.7 cannot withstand a
motion to strike.  *See Kashian*, 98 Cal. App. 4th at 911 (holding that the criminal illegality
exception does not apply to conduct that is simply alleged to have been illegal: "If that were the
test, the statute (and the [litigation] privilege) would be meaningless.").  Indeed, "[n]umerous
cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and
activity." *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 154 (2012);
*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228,
1245–46 (2005) ("Mere allegations that defendants acted illegally, however, do not render the
anti-SLAPP statute inapplicable.").

 As California courts have noted, "a plaintiff's complaint always alleges a defendant
engaged in illegal conduct in that it violated some common law standard of conduct or statutory
prohibition, giving rise to liability, and we decline to give plaintiffs a tool for avoiding the
application of the anti-SLAPP statute merely by showing any statutory violation." *Mendoza v.
ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1654 (2010).  Thus, to
"conclusively establish" the conduct as illegal as a matter of law, Mogan must proffer
"uncontroverted and conclusive evidence." *Flatley*, 39 Cal. 4th at 320.  Mogan alleges that SRC's
"letter was issued to extort funds from Plaintiff so he would send another filing fee to the AAA,
not to engage in speech on a public issue." SRC Opp'n at 12 (citing *Garretson v. Post*, 156 Cal.
App. 4th 1508, 1522–25 (2007) (holding act of noticing a nonjudicial foreclosure sale does not
qualify as a protected activity under the anti-SLAPP statute because it is a private procedure
without a close link "to any governmental, administrative, or judicial proceedings or regulation.").
But "[e]xtortion is the obtaining of property from another, with his consent . . . induced by a
wrongful use of force or fear." Cal. Pen. Code § 518.  Here, the SRC Defendants attempted to
meet and confer in connection with the first version of the sanctions motion, along with the June
10, 2019 cover letter sent with service of that motion, in accordance with California Civil
Procedure Code § 128.7(c)(1).  Serving a motion in compliance with the rules—a motion that was

ultimately granted by the superior court and affirmed on appeal—was a step in the litigation process.  The Court also notes that the revised motion, which was served, filed, and granted, asserted substantively the same arguments as the previous version.

Further, Mogan has conceded that "[w]hether evidence of extortion exists is disputed as explained below but it is undisputed what the AAA stated in its May 9, 2019 email versus the misrepresentations in two separate declarations filed in state court."  SRC Opp'n at 13; *see also id.* at 11 ("The Court must therefore determine whether the letter and sanctions motion are a writing made 'in connection with' the litigation between Ms. McCluskey and Defendant Airbnb employees pending in San Francisco Superior Court.").  At most, Mogan alleges a fact which is in dispute and confirms the Court should move to the second prong of the analysis.  *See Governor Gray Davis Com.*, 102 Cal. App. 4th at 460 (where "the legality of [a defendant's] exercise of a constitutionally protected right [is] in dispute in the action, the threshold element in a section 425.16 inquiry has been established."); *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 965 (2010) (factually disputed allegation of fraud under Cal. Bus. & Prof. Code, § 6128 insufficient to meet *Flatley*).

In short, "but for the [SRC Defendant's] alleged actions taken in connection with that litigation, [Mogan's] present claims would have no basis.  This action therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong."  *Navellier*, 29 Cal. 4th at 90. Accordingly, the Court finds the SRC Defendants have met the first step burden of showing their activity is protected under the anti-SLAPP statute.

### b.     Anti-SLAPP Step Two

The second prong shifts the burden back to Mogan and requires him "to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).  The Rule 12(b)(6) standard for a motion to dismiss applies here because the SRC Defendants challenge the legal sufficiency of Mogan's complaint, arguing it is apparent on the face of the complaint that he cannot succeed.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834–35 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018) ("when an anti-SLAPP motion to strike challenges only the legal sufficiency

United States District Court
Northern District of California

20

of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."). They argue the conduct he challenges is privileged under California's litigation privilege, Cal. Civ. Proc. Code § 47. SRC Mot. at 8. As noted above, California's litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Action Apartment Ass'n*, 41 Cal. 4th at 1241 (alteration in original); *see also* Cal. Civ. Code § 47(b).

Here, Mogan's allegations against the SRC Defendants are premised entirely on communications made as part of a judicial proceeding. In short, Mogan is suing the SRC Defendants because they represented a client, successfully used the procedure authorized under Code of Civil Procedure section 128.7 and were awarded sanctions which were not disturbed on appeal. As courts routinely recognize, 'it's hard to imagine an abuse of process claim that would not fall under the protection of the [Anti-SLAPP] statute." *Booker*, 155 Cal. App. 4th at 1370; *Thayer*, 207 Cal. App. 4th at 154 ("if the plaintiff is a nonclient who alleges causes of action against someone else's lawyer based on that lawyer's representation of other parties, the anti-SLAPP statute is applicable to bar such nonmeritorious claims"); *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832, 843 (Cal. Ct. App. 1982) (settlement proposals, even if "made in a manner which might be considered a veiled 'threat,'" are privileged); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006) (same); *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 921-22 (2004) ("The litigation privilege is simply a test of connectedness or logical relationship to litigation," and noting that a party cannot avoid application of the privilege by arguing that statements were published to coerce a settlement); *Bergstein*, 236 Cal. App. 4th at 814 ("A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim."). As such, the Court finds Mogan's abuse of process claim is barred by the litigation privilege. *See Holland v. Jones*, 210 Cal. App. 4th 378, 382 (2012) ("statements, whether true or false or made with malice or without, in her declaration filed in the marital dissolution proceedings, on which Holland bases his defamation cause of action against

21

United States District Court
Northern District of California

1  her, fall squarely within the litigation privilege."); *Chang v. Lederman*, 172 Cal. App. 4th 67, 87

2  (2009) ("letter to Chang directing her to leave the Sherman Oaks residence is absolutely protected

3  under the litigation privilege codified in Civil Code section 47, subdivision (b), because it was sent

4  to further the objectives of the probate proceedings initiated by Hadar").  The Court is satisfied

5  that its conclusion is consistent with the public policy underpinnings of the litigation privilege;

6  specifically, to ensure that attorneys "zealously protect their clients' interests" by "protect[ing]

7  them from the fear of subsequent derivative actions for communications made in the context of

8  judicial proceedings." *Edwards*, 53 Cal. App. 4th at 30.

9             **c.**    **Discovery**

10        In the alternative, Mogan argues the Court cannot determine the merits of the SRC

11  Defendants' motion because he has not been afforded a sufficient opportunity to conduct

12  discovery on matters relevant to oppose the motion and demonstrate the merit of his claim.  SRC

13  Opp'n at 13-14.  It is true that the Ninth Circuit requires a party opposing an anti-SLAPP motion

14  be afforded the same right of discovery as a party opposing summary judgment under Rules 56(f)

15  and (g).  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (reversing district

16  court's granting of certain defendants' anti-SLAPP motions and remanding to the district court to,

17  in part, permit discovery where information "in the defendants' exclusive control" may have been

18  "highly probative to [plaintiff's] burden"); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp.

19  2d 973, 982 (C.D. Cal. 1999) ("Because the discovery-limiting aspects of § 425.16(f) and (g)

20  collide with the discovery allowing aspects of Rule 56, these aspects of subsections (f) and (g)

21  cannot apply in federal court").  However, Mogan has not shown how any discovery he seeks

22  would have been material to establishing his claim was meritorious.  Instead, he seeks discovery

23  directed toward the merit of the claim he made in the underlying motion to lift the stay, i.e., that

24  the Airbnb Defendants' AAA payment was not timely.  *See* Mogan Decl.¶ 43, ECF 26-2 (seeking

25  "all email correspondence between Defendants and Airbnb Inc. and the AAA between April 1,

26  2019 and May 31, 2019 concerning Ms. McCluskey's arbitration claim" which Mogan expects to

27  "show Defendants knew all along the $7,500 payment was not made before May 1, 2019.").  The

28  timeliness of the payment, however, is not at issue here and was, in fact, the subject of the

1    underlying motion to lift the stay, the sanctions motion and the appeal.  Regardless, no discovery

2    is necessary here, where Mogan's claim is not viable as a matter of law because it is based upon

3    conduct that "is clearly protected by California's litigation privilege."  *Ekorus, Inc. v. Elohim EPF*

4    *USA, Inc.*, 2020 WL 3891449, at *4 (C.D. Cal. 2020); *Semiconductor Equip. & Materials Int'l,*

5    *Inc. v. The Peer Grp., Inc.*, 2015 WL 5535806, at *8 (N.D. Cal. Sept. 18, 2015) (denying request

6    for discovery because "even if such evidence were uncovered in discovery, it would not overcome

7    the litigation privilege.").

8                    **d.      Summary**

9            The Court concludes that the conduct that forms the basis of Mogan's complaint is

10   protected activity under California's anti–SLAPP statute, and that the litigation privilege applies.

11   Accordingly, because Mogan cannot prevail on the merits of these claims, the Court **GRANTS** the

12   SRC Defendants' special motion to strike Mogan's abuse of process claim against them.

13           **3.      Attorney's Fees**

14           For the first time in their reply brief, the SRC Defendants argue they should be awarded

15   the fees they incurred "under the separate Noticed Motion."  Reply at 3, 10.  In any action subject

16   to the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to

17   recover his or her attorney's fees and costs."  Cal. Code Civ. P. § 425.16(c); *Verizon Delaware v.*

18   *Covad Comms.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Pinnacle Ventures LLC v. Bertelsmann*

19   *Educ. Servs. LLC*, 2020 WL 1082764, at *2 (N.D. Cal. Mar. 6, 2020) ("Unless the plaintiff

20   establishes a probability of prevailing on the claim, the court must grant the motion and ordinarily

21   must also award the defendant its attorney's fees and costs.") (quoting *Barry*, 2 Cal. 5th at 320).

22   However, the SRC Defendants did not move for attorney's fees as part of their motion to dismiss,

23   and there is no "separate Noticed Motion" on the docket.  Accordingly, the request is denied

24   without prejudice.

25                    **VI.    CONCLUSION**

26           For the reasons stated above, the Court **GRANTS** the SRC and Airbnb Defendants'

27   motions to dismiss.  As leave to amend would be futile, dismissal is with prejudice.  The Court

28   shall enter a separate judgment, after which the Clerk of Court shall terminate this matter.  If the

United States District Court
Northern District of California

1   SRC Defendants seek attorney's fees, they shall file any motion by February 10, 2022.

2       **IT IS SO ORDERED.**

3

4   Dated: January 10, 2022

5

6       THOMAS S. HIXSON
        United States Magistrate Judge